Emanuel D. **HAYES**, Appellant

v.

The **STATE** of Texas, Appellee

NO. 01–15–00982–CR

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 7, 2017.

Sarah V. Wood, Houston, TX, for appellant.

Kim Ogg, District Attorney, Melissa Munoz, Assistant District Attorney, Houston, TX, for State.

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

## OPINION

Sherry Radack, Chief Justice

Appellant, Emanuel Hayes, pleaded guilty to aggravated robbery of an individual over sixty-five years of age or disabled, and, after a presentence investigation ["PSI"], the trial court found appellant guilty and assessed punishment at 16 years' confinement. In single point of error, appellant contends the trial court erred because it heard a day of appellant's punishment proceedings without appellant being present. We affirm.

## BACKGROUND

### The Offense

On November 6, 2013, six young people—appellant, Darion Amos, "Marcus," "Zae," and two girls—knocked on the door of 78-year-old Richard Chandler, forced their way into his apartment when Chandler opened the door, and stole several items, including a computer tablet, keys to a truck, and a gold ring that Mr. Chandler usually wore.

During the home invasion, Chandler was knocked unconscious and sustained bruises and swelling of his face, ear, and brain. He was taken to Ben Taub Hospital, where he remained for several weeks. After being released from Ben Taub Hospital, Chandler spent several months in a rehabilitation facility. While he had suffered some degree of dementia before the home invasion, Chandler's dementia accelerated afterward. He never recovered his ability to communicate with his family and became very combative. In her victim impact statement, Chandler's daughter stated that he died in 2015 when he "went into the kitchen to get something to drink and wound up drinking a plumbing solution." She felt like Chandler would still be alive today if he had not been assaulted.

A few days after the aggravated robbery of Chandler, appellant and Darion Amos were arrested at the scene of another burglary in the same apartment complex. When police searched appellant's car, they found several items that had been stolen from Chandler's apartment, such as the truck keys, an Android tablet, and Chandler's gold ring. Both appellant and Amos were charged with aggravated robbery in connection with the home invasion of Chandler.

### The Guilty Pleas

Amos pleaded guilty on February 18, 2015, and his case was reset for a PSI hearing. Appellant pleaded guilty on June 5, 2015, and his case was also reset for a PSI hearing. Neither defendant was adjudicated guilty at the time of their pleas.

### The October 6, 2015 PSI hearing—both defendants' cases are called

On October 6, 2015, the trial court called both appellant's and Amos's cases for a joint PSI hearing. Both appellant and Amos were present, along with their separate counsel. At the hearing, a single exhibit containing PSI materials regarding both defendants was entered into evidence as Exhibit 1 in each of the defendant's cases. The State then called two witnesses, Chandler's daughter and ex-wife, who testified about the effect the crime had on their family. The State then rested its punishment case against both defendants.

Amos's counsel then called Samantha Amos, who testified on behalf of her son. Before her testimony, the trial court noted, "Let the record reflect this is in regard to the Amos case. After Ms. Amos's testimony, the trial court adjourned the hearing until the next day. Ms. Amos testified that she had warned her son about hanging around with appellant.

*The October 7, 2015 PSI hearing—only Amos's case is called*

The next day, the trial court resumed the PSI hearing and called "Cause No. 1408362, The State of Texas vs. Darion Amos." The record shows that "Mr. Amos is present and counsel is present as well." Thereafter, Amos testified about the day of the offense and presented evidence to support his requests for probation, such as his family and employment history. Specifically, Amos testified that he met appellant at the apartment complex where Amos [and Chandler] lived. Amos testified that on the day of the offense, he was playing basketball with appellant when appellant "told me that he had a lead basically." Appellant told him "he had a lick," and "he knew where some money was. It was $8,000 supposedly, and that we were going to break into the house to get the money." Amos further testified that "[i]t was [appellant's] plan."

Amos testified that appellant was the person who knocked on Chandler's door, and "Marcus pushed [Chandler] down." While Amos testified that he did not see anyone strike Chandler, he also noted that appellant stayed downstairs with Chandler while everyone else went upstairs. When he came back downstairs, he saw that Chandler was unconscious, and that he saw appellant and Marcus standing around him. Amos testified that he asked what happened to Chandler, but that appellant and Marcus "both shrugged their shoulders."

Appellant's trial counsel, though present during Amos's testimony, did not participate in the hearing.

At the conclusion of the day, the trial court found Amos guilty, denied his motion for community supervision, and reset the case for sentencing in two weeks.

*The October 9, 2015 PSI hearing—only appellant's case is called*

The PSI hearing resumed on October 9th, and the trial court called "Cause No. 1408364, the State of Texas v. Emanuel Hayes." Before the hearing began, the following exchange took place.

[Trial Court]: The record will reflect that the State put on their case, both co-defendants [Appellant] and Amos. Mr. Amos's attorney put on the defense witnesses for Mr. Amos. [Appellant] was not brought up.

[Appellant's Defense Counsel]: Let the record reflect that I was present for that portion of the PSI.

[Trial Court]: All right. [Appellant] was not brought up. And [Appellant] is now present. Counsel for the defense was present and ready.

Appellant also testified about his absence from court on October 7th.

[Defense Counsel]: You weren't here for [Amos's] testimony?

[Appellant]: No, sir.

[Defense Counsel]: But I told you something about what that was about. I was here for that. I told you that, right?

[Appellant]: Yes, sir.

Appellant's mother, appellant's wife, and appellant then testified in support of his request for community supervision. Appellant's version of the events was that it was "[Marcus's] lick," and that Marcus pushed Chandler to the ground. Appellant also claimed that Marcus later admitted that he beat up Chandler.

At the conclusion of the October 9th hearing, the trial court stated:

Well, I heard the testimony the other day from the PSI, information from the co-defendant and the PSI information from [appellant]. I heard the State's case, and then defendant, co-defendant Amos put on punishment evidence. I

heard the punishment evidence today in [appellant's] case.

\* \* \* \*

Now, that's the state of the record. So, based on your plea of guilty the other day on June 5th, 2015, you pleaded guilty to the indictment in Cause No. 1409364, and I believe papers were admitted as Defense Exhibit No. 1 on that date. The Court finds you guilty and denies your application for Community Supervision and Motion for Community Supervision.

Having found both appellant and Amos guilty, the trial court stated, "Now, that I've heard all of the evidence, I'm going to sentence [appellant] and Mr. Amos on the same date. Mr. Amos has a court date about two weeks from now. At that time I will impose a sentence."

### The October 30th Sentencing Hearing— both defendants' cases are called

On October 30, 2015, both appellant and Amos, along with their separate defense counsel, were present in court. The trial court assessed a 16–year sentence for both appellant and Amos.

## PROCEEDINGS IN APPELLANT'S ABSENCE

In his sole issue on appeal, appellant contends:

This case should be reversed because [appellant] was not present during part of the punishment proceeding in which his co-defendant testified against him and there was no waiver.

Specifically, appellant contends that because he was not "brought up" from the jail on the day that his co-defendant, Amos, testified and presented his own punishment defense, appellant was denied his Sixth Amendment rights under the Confrontation Clause.

Before addressing the merits of appellant's complaint on appeal, we must consider two issues: First, whether the October 7th hearing, at which only Amos's case was called, is part of appellant's trial. Second, we must decide whether appellant waived his complaint because his attorney, who was present in court on October 7th, failed to object to appellant's absence.

### Was the October 7th PSI hearing part of Appellant's Trial?

The Code of Criminal Procedure provides the following regarding joint trials:

Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. ANN. art 36.09 (West 2007). Under this provision, the trial court may jointly try defendants for the same offense, and it may order a severance if a joint trial would cause prejudice to a defendant. The statute, however, does not provide for a hybrid trial, wherein parts of the trial are joint and parts of the trial are severed.

■ Because this trial commenced as a joint trial on October 6, 2015 and concluded as a joint trial on October 30, 2015, we conclude that the interim dates—October 7th and October 9th—were also portions of

the joint trial. As such, appellant has the right to complain about his absence from the courtroom on October 7, 2015.[1]

### Did Appellant Waive This Error Because Defense Counsel Failed to Object?

■ Next, we consider whether appellant forfeited his complaint because his attorney, who was present in court on October 7th, failed to object to appellant's absence. In considering this issue, we are mindful that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970).

The State argues that, "despite trial counsel's presence in the courtroom during Amos's testimony, he did not object to taking the codefendants testimony outside appellant's presence," and that, as a result, appellant has waived this issue on appeal. Appellant, however, contends that the right to be present in the courtroom is "not subject to procedural default under ordinary preservation-of-error rules; rather a defendant's right to be present in the courtroom must be implemented by the judicial system unless expressly waived." *See Kessel v. State*, 161 S.W.3d 40, 45 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

Before we can determine whether appellant's counsel was required to object to preserve error, we must categorize the alleged error under the procedural default rules set forth in *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). *Marin* recognized three categories of rights—those that are mandatorily en-

forced, rights subject to waiver, and rights subject to forfeiture. *Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015). The first category—those that are mandatorily enforced—involve absolute requirements and prohibitions. *See Garcia v. State*, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004). The "[i]mplementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. *Marin*, 851 S.W.2d at 279. The second category—rights subject to waiver—involve rights of litigants that must be implemented by the system unless expressly waived. *Garcia*, 149 S.W.3d at 144. Such a waiver must amount to an intentional relinquishment or abandonment of a known right or privilege. *Peyronel*, 465 S.W.3d at 652 (citing *Janecka v. State*, 739 S.W.2d 813, 829 (Tex. Crim. App. 1987)). The third category—rights subject to forfeiture—involve rights of litigants which are implemented upon request. *Garcia*, 149 S.W.3d at 144. "[A]ll but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong[;] [m]any constitutional rights fall into this category." *Peyronel*, 465 S.W.3d at 652.

■ The State argues that appellant's counsel was required to object at trial to preserve appellant's right to complain about his absence from trial. As such, the State contends that the right of an accused to be present at court proceedings falls into the third category, i.e., rights subject to forfeiture if not requested. Appellant, while conceding that the right to be present can be waived under certain circumstances not present here, argues that the right to be present must be implemented

---

1. The reporter's record in this case did not contain a transcript from the October 7th hearing. However, the reporter's record in *Amos v. State*, No. 01–15–00980–CR, which is also pending in this Court, does contain a transcription of the October 7th hearing. Therefore, we ***order*** the Clerk of this Court to file a copy of the October 7, 2015 hearing in the present case. We likewise order that a transcription of the October 9th hearing in this case be filed in *Amos v. State*, No. 01–15–00980–CR.

by the trial court even without a request or objection by appellant. As such, appellant contends that the right of an accused to be present at court proceedings falls into the second category, i.e., rights that must be implemented unless intentionally waived. We agree with appellant.

We believe that the resolution of this case is controlled by the Court of Criminal Appeals's decision in *Garcia*, 149 S.W.3d 135. In *Garcia*, the defendant was present in court with his attorney, but the defendant did not speak English, and the defendant did not understand much of the testimony that took place during trial. *Id.* at 138–39. The defendant had no idea that he had a right to a translator and never told anyone that he did not want a translator. *Id.* at 139. The trial court was aware that the defendant did not understand English, and was also aware that no one was translating the trial proceedings to the defendant. *Id.* Defense counsel never objected to the lack of a translator or requested a translator for the defendant. *Id.*

On appeal, the defendant argued that his Sixth Amendment right to confront witnesses was violated because he did not understand the trial court proceedings without an interpreter. *Id.* at 140. The Court of Criminal Appeals began by noting that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom during his trial[,]" and that "[t]he right to be present includes the right to understand the testimony of the witnesses." *Id.* at 140. The court then addressed the State's argument that the defendant had waived error because his attorney did not object at trial to the lack of a translator. *Id.* at 143.

The Court concluded that the right to have an interpreter, *which it had equated to the right to be present in the courtroom,* was a category two right, which must be implemented by the trial court absent a waiver. *See id.* at 144. The court found that this holding was required for two reasons. *Id.* First, prior case law had held that, if the trial court was aware that the defendant had a language barrier [was not present] the trial court had an independent duty to insure that the proceedings were interpreted for the defendant. *Id.* Second, the court found that it would be illogical to require a non-English-speaking defendant to assert his right to an interpreter when he may very well be unaware of that right in the first place. *Id.* For these reasons, the court concluded that when the trial court is aware that the defendant has a problem understanding English, the trial court has an independent duty to see that the proceedings are translated for the defendant, and that such a duty made the right a category two right under *Marin*. In other words, the defendant's right to understand the proceedings could not be forfeited by his failure to assert the right.

The same logic applies here. *Garcia* is entirely premised on the notion that if a defendant does not understand the proceedings taking place, *it is as if he is not even present* because the right to be present includes the right to understand the proceedings. In the present case, the defendant was not merely unable to understand the proceedings, he was not even present in the trial court October 7, 2015. Because appellant was "not brought up" from the jail for the October 7th hearing, the trial court was aware of appellant's absence from the courtroom. Indeed, the record from that date shows that the trial court stated on the record at the October 7th hearing that "Mr. Amos is present and counsel is present as well[,]" but made no mention of appellant until the next trial date when he acknowledged on the record

that appellant was "not brought up" from jail on the previous trial date.

And, just as the Court of Criminal Appeals found it illogical to require a non-English-speaking defendant to assert his right, we also find it illogical to require a defendant who is not present in the courtroom to assert a right to be present that he may not even know he has.

■ Therefore, we conclude that when the trial court sees that a defendant is not present in court for his trial, absent a waiver by the defendant, the trial court has an independent duty to secure the defendant's presence in the courtroom even absent a request by the defendant's attorney. This Sixth Amendment right to be present for trial to confront witnesses is a category two *Marin* right, and cannot be forfeited by counsel's failure to assert it on a defendant's behalf.[2]

This conclusion is supported by the U.S. Supreme Court's language in *Allen,* wherein it stated that "the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct." *Allen,* 397 U.S. at 342–43, 90 S.Ct. at 1060. Both of the examples given by the Supreme Court, consent and misconduct, would be the "intentional relinquishment or abandonment of a known right or privilege." *Peyronel,* 465 S.W.3d at 652. The Supreme Court does not, however, indicate that the right could be lost by inaction or the failure to assert it.

Here, there is nothing in the record to show that appellant consented to be absent when Amos testified. In fact, it seems that appellant did not even know of the hearing until his counsel told him about it after the fact.[3] There is also no evidence that appellant committed any misconduct to justify a removal from the courtroom. Because there is nothing to show that appellant waived his right to be present at the October 7, 2015 hearing, either by consent or misconduct, the trial court erred in not taking affirmative steps to secure his presence.

### Was Appellant's Exclusion from the October 7th Hearing Harmless?

■ Having decided that appellant did not waive his right to be present at the October 7, 2015, and that the trial court erred in not securing his presence, we now consider whether such error was harmful.

■ The Confrontation Clause of the Sixth Amendment creates a constitutional right to be physically present at trial. *Allen,* 397 U.S. at 338, 90 S.Ct. at 1058. Violations of the right to be present are subject to harmless error analysis. *Routier v. State,* 112 S.W.3d 554, 577 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals has adopted the "reasonably substantial relationship" test in order to satisfy Fourteenth Amendment due process and Sixth Amendment concerns. *Routier,* 112 S.W.3d at 576; *Adanandus v. State,* 866 S.W.2d 210, 218–19 (Tex. Crim. App. 1993). The "reasonably substantial relationship" test focuses on the effect of the

---

2. The State also relies on an unpublished case from this Court to support its argument that, without an objection, appellant waived his right to complain about his absence from the trial. *See Tillman v. State,* No. 01-99-00993-CR, 2000 WL 210603 (Tex. App.–Houston [1st Dist.] Feb. 24, 2000, pet. ref'd) (not designated for publication). However, *Tillman* predates both *Marin* and *Garcia* and is no longer valid authority on this issue.

3. [Defense Counsel]: You weren't here for [Amos's] testimony?

[Appellant]: No, sir.
[Defense Counsel]: But I told you something about what that was about. I was here for that. I told you that, right?
[Appellant]: Yes, sir.

error on the advancement of the defendant's defense. *Adanandus*, 866 S.W.2d at 219. Under the "reasonably substantial relationship" test, the defendant's presence must bear a reasonably substantial relationship to the opportunity to defend. *Id.* If the defendant's presence would not have furthered the defense, his or her presence does not bear a reasonably substantial relationship to the opportunity to defend. *Id.* We consider a constitutional error harmful unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

Appellant contends that "[t]estimony from this missing day had a direct and negative effect on the sentencing verdict and the evidence was disputed." Appellant seems to suggest that, had he been able to cross-examine Amos on October 7th, the trial court may have found him to be less culpable than Amos and given him a lighter sentence. Based on this record, we disagree.

On the first day of the PSI hearing, which was attended by appellant and his attorney, the PSI report was admitted without objection, and contained both appellant's and Amos's version of the events of the robbery. In the PSI, appellant claims that it was Marcus's idea to commit the robbery; appellant also stated that his only role in the crime was to drive the car. In contrast, in the PSI, Amos stated that appellant "told everyone there were a lot of valuable and money inside the complainant's residence," and that "they all decided to go get it." Amos's statement in the PSI also provided that "[W]hen the complainant (Mr. Chandler) answered the door, co-defendant Hayes and Marcus forced their way in knocking Mr. Chandler down, and that "while co-defendant Hayes struggled with Mr. Chandler, they went through the residence and removed property." Thus, in the PSI, appellant attributed the planned robbery to Marcus and denied that he ever even entered complainant's apartment. Amos, in contrast, said that "they all decided" to commit the robbery, but blamed appellant and Marcus with knocking down Chandler, and appellant with struggling with Chandler. Amos's mother also testified at this joint hearing, without objection from appellant, that she had told her son to "stay away from [appellant]," because "it looked as if he was [at the apartment complex] for no good."

When Amos testified at the PSI hearing on the day appellant was not present in court, his testimony was actually more favorable to appellant. While Amos did say that the "lick" was appellant's idea, he testified, contrary to his PSI statement, that Marcus pushed Chandler down. He did not testify that he saw appellant struggling with Chandler, but said that he did not see anyone hurt Chandler after he fell.

And, although appellant did not cross-examine Amos at the time of Amos's testimony, appellant's counsel, who was present, made appellant aware of the contents of Amos's testimony, and appellant was able to present his own version of the events at the hearing on the following day. In his own testimony, appellant, contrary to his statement in the PSI, admitted entering the house, but blamed the "lick" and subsequent injury to Chandler on Marcus.

Significantly, there is no evidence, either at the PSI or in the testimony of either Amos or appellant, that Amos was the person who pushed Chandler. Nevertheless, the trial court gave both Amos and appellant identical 16–year sentences. Thus, it is clear that the trial court did not find appellant more culpable than Amos, even considering Amos's testimony from the day that appellant was not present in court.

Similar to *Adanandus*, we cannot "envision how [the defendant's] presence could have furthered his defense," because there is "no evidence that appellant had any information, not available to the attorneys or the court, regarding any of the matters discussed at the [hearing]." *Adanandus*, 866 S.W.2d at 220. The trial court had before it both Amos's and appellant's version of the events of the robbery. In fact, the trial court had multiple versions of the events of the robbery through both defendants' testimony and their statements in the PSI. Appellant points to nothing that he could have presented that was not already in evidence, or how, had the trial court heard the same, his punishment would have been less than Amos's.

For this reason, we conclude that appellant's presence at the October 7th hearing would not have furthered his defense, thus his presence does not bear a reasonably substantial relationship to his opportunity to defend.

We overrule appellant's sole issue on appeal.

### CONCLUSION

We affirm the trial court's judgment.