**Affirmed and Memorandum Opinion filed August 20, 2020.**



**In The**

## Fourteenth Court of Appeals

### NO. 14-19-00008-CR

**DEBRA ELAINE BROUSSARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16-CR-0178**

## MEMORANDUM OPINION

Appellant Debra Elaine Broussard appeals her conviction for evading arrest or detention with a vehicle. After a jury found appellant guilty and she pleaded true to two enhancement paragraphs, the trial court assessed her punishment at 30 years' imprisonment. In a single issue on appeal, appellant contends that the trial court violated her constitutional right and her statutory right to be present at trial when the court continued jury voir dire for approximately seven minutes while appellant was absent from the courtroom. Holding that appellant waived her

constitutional claim and any statutory error was harmless, we affirm.

## *Background*

**Voir dire proceedings.** After the trial court and the prosecutor completed their voir dire examinations of jury panel members, the trial court announced a fifteen-minute break before defense counsel would begin his voir dire examination. The judge specifically stated that proceedings would resume at 12:05 p.m. At 12:24 p.m., the trial judge went back on the record outside the presence of the jury and stated that appellant had "absented herself, and a search of the courthouse ha[d] not located her." The judge then stated that since trial had begun, appellant was absent "at her own risk" and proceedings would continue.

The judge asked if the prosecutor or defense counsel had any response, and the following exchange occurred:

> [Defense counsel]: Judge, for the record, probably put on there the fact that I looked in all four floors, went to the courtyard, that your bailiff and Lori—that we all went and looked everywhere for her and she's nowhere to be found by men or women.

> THE COURT: We've checked all the restrooms. We've checked the snack bar area. Can't explain it. If she shows up, we will let her come on in and sit down, but otherwise we are going to proceed.

The jury panel was subsequently brought back into the courtroom and defense counsel began his voir dire examination by stating:

> Ladies and gentlemen, my name is Bill Agnew. As you can tell, my client's not here. I've been practicing law for 22 years. So, I've tried quite a few cases. Aren't many times first things happen to me anymore in the courtroom. This is a new first for me. Maybe she'll come back. I don't know. We'll see. But I still have to go forward and perform my job as if she was here. So, that's what I'm going to do here today.

After additional, short introductory remarks, defense counsel briefly

questioned one jury panel member and began questioning a second, when the judge took a brief recess and appellant returned to the courtroom. Appellant was then present for the remainder of the jury selection process and the rest of the trial.

During the portion of voir dire when individual panel members were called to the bench to answer questions, one of the panel members asked to speak to the judge. This panel member told the judge:

> I don't think that I could be fair knowing that this case is evading arrest and we're sitting out there for 25 minutes waiting on the Defendant to show up. And quite frankly, that should be a question asked to a lot of people out there in the jury panel.

The judge then confirmed the panel member worked as a paralegal, but neither the prosecutor nor defense counsel asked the panel member any questions. Neither this panel member nor either of the members to whom defense counsel asked questions in appellant's absence served on the jury.

The next day, prior to proceedings before the jury, the judge stated:

> Just to make sure the record is absolutely clear of what transpired yesterday, my notes indicated that we took a break at 11:47. The jury was told to be back at 12:05. At 12:24, since the Defendant was not present, we put on the record that she wasn't here and proceeded with voir dire on behalf of the Defendant. At 12:31, Ms. Broussard arrived. We took a break. She was with [defense counsel] from that point on until the voir dire had concluded.

The judge then asked the prosecutor if he had anything to add, and the prosecutor stated: "I think that the timeline is correct, and the State would just ask that the record show that the Defendant was here for the remainder of that voir dire . . . ." The judge then asked defense counsel if he had anything to add, and counsel said, "No."

**The evidence.** Deputy Jacob Manuel of the Galveston County Sheriff's

3

Office testified that he was on patrol on January 23, 2016, when he observed that traffic in a particular area was unusually heavy. He then noticed a white truck on the shoulder of the roadway that did not have a visible license plate or temporary tag. Manuel later determined that appellant was the driver and sole occupant of the truck. Manuel activated the overhead lights of his marked sheriff's vehicle, and appellant drove from the shoulder into the main lanes of the road. Manuel then activated his siren, but appellant continued to accelerate. Manuel and another sheriff's deputy in another vehicle followed appellant as she repeatedly exceeded posted speed limits, ran several stop signs, and crossed into oncoming lanes of traffic. For approximately 13 minutes, appellant refused to pull over and stop her vehicle. A total of five police vehicles became involved in attempting to stop appellant.

At one point, a deputy pulled his vehicle in front of appellant, but she drove around him and continued going. Another time, appellant drove between two vehicles that were trying to stop her. Ultimately, appellant's vehicle came to a stop when she ran into a fence. Appellant then began making "furtive movements while reaching kind of behind the seat." Manuel and another deputy removed appellant from the vehicle, placed her on the ground, and handcuffed her. A subsequent search of the vehicle discovered syringes, which later tested positive for the presence of methamphetamine. A video recording taken from Manuel's vehicle was shown to the jury. It begins two minutes before Manuel activated his overhead lights and ends well after she was taken into custody. It supports Manuel's recounting of events. During cross-examination, Manuel acknowledged appellant made statements to police indicating that she had caught her husband being unfaithful. Appellant also made statements that she wanted to kill herself or drive into water near the road.

4

Appellant testified that after a year of mental, physical, and emotional abuse, she discovered evidence suggesting her husband had been unfaithful to her. She stated that he was trying to sabotage her and get her into trouble. Regarding the day in question, she remembered looking behind her and seeing lights but did not hear a siren and did not recall what happened after that. She suggested that her medical condition, "Thyroidism," and being off her medication caused the episode. The next thing she remembered after seeing the lights was the deputies removing her from the truck. She further opined that stress as a result of her marital problems combined with her medical condition to affect her ability to think rationally.

Immediately prior to driving away, she had been on the phone with her husband and daughter, but her husband had blocked her calls and had said something about appellant's sister, who had been murdered, and it made appellant very upset. Appellant said that she was crying "really hard" and two men were trying to get the keys out of her car and kept her blocked in. She said at the time she had wanted to commit suicide. She further acknowledged five prior felony convictions, but she stated she did not possess methamphetamine and was not charged with that offense. During the punishment phase, when asked why she was late returning from the break during voir dire, appellant stated that she was outside the courthouse with her dog.

### Constitutional Claim

As stated, appellant asserts the trial court violated her constitutional right and her statutory right to be present at trial when the court continued voir dire in her absence. We will first address the constitutional claim and then turn to the statutory claim.

Under the Sixth Amendment to the United States Constitution, a criminal defendant threatened with the loss of liberty has the right to be physically present

5

during all phases of the proceedings against her. *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985).[1] The right to be present, however, can be waived if the criminal defendant voluntarily absents herself after the commencement of the trial proceedings. *Taylor v. United States*, 414 U.S. 17, 19 (1973) (per curiam); *Miller*, 692 S.W.2d at 90; *Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.—Dallas 2000, pet. ref'd). A trial commences when the process of impaneling jurors begins. *Miller*, 692 S. W.2d at 91. Accordingly, once voir dire proceedings begin in a defendant's presence, a defendant may voluntarily absent herself from the proceedings without a violation of the Sixth Amendment right to be present during all phases of the trial. *Id.*; *Tracy*, 14 S.W.3d at 826.[2]

Here, voir dire proceedings began with appellant present in the courtroom. After the prosecutor completed his voir dire examination, the trial judge announced a brief recess, specifically stating that proceedings would resume at 12:05 p.m. However, when the trial court went back on the record at 12:24 p.m., appellant had not returned to the courtroom, and, despite efforts to find her by her own counsel and court personnel, she had not been found. Appellant had been informed when to

---

[1] Appellant notes that Article I, section 10 of the Texas Constitution also protects this same right, but she does not argue that the Texas Constitution affords any greater protection in this regard than does the United States Constitution. Accordingly, we do not address her rights under the Texas Constitution separately. *See, e.g., Lilly v. State*, 365 S.W.3d 321, 326 (Tex. Crim. App. 2012); *Vasquez v. State*, 324 S.W.3d 912, 918 n.4 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

[2] The Court of Criminal Appeals recognizes three categories of constitutional rights: rights that are mandatorily enforced, rights subject to waiver, and rights subject to forfeiture. *Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). The right to be present at trial falls into the second category, rights subject to waiver, which encompasses rights that must be implemented by the system unless expressly waived. *See Garcia v. State*, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004); *Hayes v. State*, 516 S.W.3d 649, 654–55 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Kessel v. State*, 161 S.W.3d 40, 44 n.1 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

return to the courtroom but had not returned by that time or even nineteen minutes later when the court went back on the record. Proceedings before the jury recommenced shortly thereafter. Nothing in the record suggests appellant's absence was involuntary. During the punishment phase of trial, appellant indicated she had left the courthouse to be with her dog.

The record therefore supports the trial court's conclusion that appellant voluntarily absented herself from the courtroom after voir dire proceedings had already begun. *See Taylor*, 414 U.S. at 19 (concluding defendant voluntarily absented himself when he failed to return to the courtroom after a lunch recess); *Miller*, 692 S.W.2d at 90–91 & n.4 (holding defendant voluntarily absented himself when he failed to return after a short recess, telling his lawyer he "was going to get a match"); *see also Gittens v. State*, 560 S.W.3d 725, 737–38 (Tex. App.—San Antonio 2018, pet. ref'd); *Graham v. State*, No. 12-15-00160-CR, 2016 WL 3568056, at *3 (Tex. App.—Tyler June 30, 2016, no pet.) (mem. op., not designated for publication); *Hudson v. State*, 128 S.W.3d 367, 376 (Tex. App.— Texarkana 2004, no pet.). Accordingly, appellant waived her constitutional right to be present during the period she was absent from the voir dire proceedings. *See Taylor*, 414 U.S. at 19; *Miller*, 692 S.W.2d at 90; *Tracy*, 14 S.W.3d at 826.

### *Statutory Claim*

Unlike the Sixth Amendment right to be present at trial, the right to be present protected by Texas Code of Criminal Procedure article 33.03 cannot be waived until after a jury is selected. *See Miller*, 692 S.W.2d at 91; *Tracy*, 14 S.W.3d at 826; *see also Haywood v. State*, No. 14-12-00102-CR, 2013 WL 5969461, at *6 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, no pet.) (mem. op., not designated for publication). For purposes of article 33.03, a jury is selected when the parties have handed in their respective jury lists with their peremptory

challenges marked. *Miller*, 692 S.W.2d at 93. Because appellant absented herself from the courtroom prior to that point, her statutory right to be present was violated when the trial court continued with voir dire in her absence. *See Tracy*, 14 S.W.3d at 826; *see also Haywood*, 2013 WL 5969461, at \*6. Indeed, the State concedes that under the current state of Texas law, the trial court erred.

Because a violation of article 33.03 is non-constitutional error, we may not reverse unless the error affected a substantial right. *See* Tex. R. App. P. 44.2(b); *Thomas v. State*, 505 S.W.3d 916, 924–25 (Tex. Crim. App. 2016); *Tracy*, 14 S.W.3d at 827. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Thomas*, 505 S.W.3d. at 926. A substantial right is not affected and the error is harmless if, after reviewing the entire record, including the weight of the evidence of the defendant's guilt and the character of the error, we have a fair assurance that the error did not influence the jury or had but a slight effect. *See id*. at 926–27.

We begin the harm analysis by noting that by the trial court's calculations, appellant was absent for only about seven minutes of the voir dire proceedings. The prosecutor concurred with the trial court's timeline, and defense counsel offered no objection when given the opportunity. Additionally, neither of the two jury panel members defense counsel briefly questioned during appellant's absence ended up on the jury, and the panel member who stated that she could not be "fair" in light of appellant absenting herself also did not serve on the jury. *See Smith v. State*, 534 S.W.3d 87, 92 (Tex. App.—Corpus Christi 2017, pet. ref'd) (holding defendant's brief absence from voir dire was harmless where every jury panel member who expressed a potential bias against him because of his actions was struck for cause). Appellant does not argue that she was harmed by being unable to aid her counsel because she was absent for those seven minutes.

The evidence of appellant's guilt was strong. The elements of evading arrest or detention while using a motor vehicle are (1) intentionally fleeing from a person (2) whom the defendant knows is a peace officer (3) trying to lawfully arrest or detain her and (4) using a motor vehicle while in flight. *See* Tex. Penal Code § 38.04(a), (b)(2)(A). A sheriff's deputy provided a firsthand account of appellant's flight from officers, which was supported by video evidence. Indeed, appellant did not deny that she fled from the deputies; she alleged instead that stress due to marital problems combined with her medical condition to affect her ability to think rationally. As her counsel phrased it during closing argument, appellant asserts she "sort of snapped." Appellant, however, did not present any expert testimony or other evidence to support her claim.

Moreover, the deputy's testimony and the video revealed that appellant was thinking clearly enough to evade police officers for around thirteen minutes, moving through traffic and passing between or around police vehicles trying to stop her on at least two occasions. Deputy Manuel also noted that once appellant's vehicle came to a stop, he observed her making "furtive movements while reaching kind of behind the seat." Syringes containing methamphetamine were subsequently discovered in appellant's vehicle. The jury additionally received evidence regarding appellant's five prior felony convictions, including for forgery, burglary of a habitation, unauthorized use of a motor vehicle, and cocaine possession. Also, it should be noted that appellant's brief absence was not mentioned before the jury at any point after she returned to the courtroom.

Appellant's primary assertion regarding harm stems from one excused panel member's comment that she could not be "fair knowing that this case is evading arrest and we're sitting out there for 25 minutes waiting on the Defendant to show up. And quite frankly, that should be a question asked to a lot of people out there in

the jury panel." Appellant argues that this statement suggests other people who served on the jury were also negatively influenced by appellant's brief absence. The juror, however, did not elaborate on why other people on the panel might need to be questioned, and there is no suggestion in the record that anyone who actually served on the jury held appellant's brief absence against her.

The evidence against appellant was strong, the evidence supporting her defense was weak, her absence was not mentioned before the jury after she returned, and there is no evidence that anyone who served on the jury was influenced by her absence. Accordingly, the trial court's error in continuing voir dire proceedings for approximately seven minutes in appellant's absence was harmless. We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    Frances Bourliot
Justice


Panel consists of Justices Christopher, Bourliot, and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).

10