

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0164-22

---

**DARREN TRAMELL HUGHES, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

---

WALKER, J., delivered the opinion of the Court, in which HERVEY, RICHARDSON, NEWELL, and MCCLURE, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEEL and SLAUGHTER, JJ., joined. YEARY, J., filed a dissenting opinion.

## O P I N I O N

Appellant Darren Trammel Hughes's deferred adjudication community supervision was revoked, and he was sentenced to ten years imprisonment, in a teleconference hearing conducted using Zoom. Several times when Appellant tried to speak during the hearing, the trial court ordered that Appellant be muted. On appeal, Appellant argued that his right to be present under the Due Process Clause was violated. The court of appeals reversed, holding that his right to be present under

the Confrontation Clause was violated, even though Appellant did not raise the Confrontation Clause in his brief.

While the court of appeals unnecessarily relied on the Confrontation Clause, it correctly resolved Appellant's point of error that his right to be present was violated. Setting aside whether the Confrontation Clause provides a right to be present in a hearing on a motion to adjudicate guilt, the right to be present under the Due Process Clause applies in those proceedings. The right to be present under the Due Process Clause is waivable under *Marin*, not forfeitable, and the court of appeals was able to review the trial court's action despite the lack of an objection. The court of appeals correctly found that Appellant was converted into a passive observer unable to communicate with counsel and therefore unable to participate in his own defense. Reversal was required, and we affirm the judgment of the court of appeals.

## I — Background

Appellant was charged with and pled guilty to tampering with a governmental record,[1] and the trial court deferred adjudication and placed Appellant on three years community supervision. Two years and ten months later, the State filed a motion to adjudicate guilt, alleging that Appellant had violated the terms of community supervision by committing two forgery offenses[2] and by failing to pay a required supervision fee, court cost, and drug testing fee. The trial court conducted the hearing on the motion to adjudicate guilt using Zoom because not all of the parties could attend in person due to the COVID-19 emergency. Specifically, only the trial court and defense counsel were physically present in the courtroom, while the State, the witnesses, and Appellant were connected

---

[1]  *See* TEX. PENAL CODE Ann. § 37.10(a).

[2]  *See* TEX. PENAL CODE Ann. § 32.21(b).

through Zoom. The trial court noted at the outset that Appellant:

> is not here -- he is on video in the jail and the reason he is not here in court is because he has been exposed to COVID-19 and may have even tested positive for it but those are people who are on the list not to come to court and are prohibited from coming to court for -- because the administration is afraid they could expose other people to the virus.

The State proceeded only on one of the alleged forgery offenses and, after Appellant pled "false" to the allegation, the State called two witnesses. The first witness was Brianna Jones, who was assigned to monitor Appellant's community supervision. Jones explained that Appellant was arrested for allegedly committing forgery, even though the conditions of his community supervision required him to not commit any offenses. Jones then went into what happened after she was notified of Appellant's arrest, and Appellant tried to speak up:

| Q | And did you move forward at that time with that allegation and have the MAJ filed? |
|---|---|
| A | Yes, I notified the Court. |
| THE DEFENDANT: | You can't stop me -- talking -- |
| THE COURT: | Can someone mute the defendant? |
| Q (By [defense counsel]) | And after that, that's all you have to do with it? |
| A | I'm sorry. Can you repeat the question? I can't really hear you. |

The State's second witness was Detective Y. Mezegabe, who was actually involved with the investigation that led to Appellant's arrest. Mezegabe was working a forgery case in which the parts department at a car dealership in Fort Bend County was defrauded through the use of a fraudulent check. Mezegabe received a possible lead from the manager of the parts department of a dealership in Harris County. With the cooperation of the parts manager, Mezegabe set up a sting operation in

which he came into contact with Appellant who came to pick up the parts and attempted to give Mezegabe a fraudulent check. Appellant interjected:

Q                      Okay. So --

THE DEFENDANT:  What?

THE COURT:       Would you mute the defendant again?

THE DEFENDANT:  That man lying, man.

THE COURT:       Okay. Do not let him leave the Zoom. We will continue.

Mezegabe then explained that the parts manager had been communicating by e-mail with a "Jimmy Martin" who was requesting car parts. On Mezegabe's instructions, the manager set up a meeting with "Jimmy Martin" at which Mezegabe would deliver the requested car parts instead of the manager. On the date of the sting, Mezegabe waited in a vehicle at the location chosen by "Jimmy Martin." When Appellant drove up, Mezegabe rolled down his car window, and Appellant asked, "Are you the parts guy?" Mezegabe replied, "Yes," and Appellant told Mezegabe "to meet him around the back." Mezegabe followed Appellant "around the back of the building" where they exited their vehicles. Mezegabe asked if he was "Jesse Martin," but Appellant corrected him and said, "No, I'm Jimmy Martin."

At that point, Appellant was arrested, and a check was found in Appellant's vehicle in which the dealership was the payee and "Tex Star Auto Repair" was the payor. The check was fraudulent.

Mezegabe interviewed Appellant, and Appellant denied knowing that the check was fraudulent and insisted he was working for somebody else. A "burner app," which would allow a caller to spoof his cell phone number, including the number that was used to contact the car dealership, was found on Appellant's phone. Additionally, Mezegabe had the parts manager send

an e-mail to "Jimmy Martin," and an e-mail notification popped up on Appellant's phone.

On cross-examination, Mezegabe explained that he did not personally arrest Appellant, and Appellant interrupted:

Q          You did not arrest him. There was another gentleman there. Some more cops arrested him; is that correct?

A          Yes.

THE DEFENDANT:  And you drew your gun on me, man. You pulled your gun on me, man. You lying, man. You drew a gun on me, man. Hey --

THE COURT:  Mute the defendant. Do not let him leave. He is in court.

Q          Did you pull a gun on him?

A          Yes.

After discussing the arrest, Mezegabe then stated that he did not see Appellant write the check, and Appellant did not give the check to him. Regarding the check itself, the routing number on the check was valid, but the account number was not. "Tex Star Auto Repair" did not exist, as confirmed by Mezegabe's visit to the address on the check.

On re-direct examination, Mezegabe added that after Appellant's arrest, "two more fraudulent checks that were filled out and multiple blank checks" were found. The State proceeded to have copies of the two additional checks admitted into evidence over defense counsel's objections, which were overruled. Appellant interrupted:

THE COURT:  Okay. Then your objections are noted. They're overruled and they are admitted. Exhibit number -- State's Exhibit No. 3 is admitted over your objections.

THE DEFENDANT:  -- ruling on those objections. I got to use the bathroom.

THE COURT: Mute the defendant.

THE DEFENDANT: Got to use the bathroom, sir.

THE COURT: Mute the defendant.

THE DEFENDANT: I take pills.

THE COURT: Mute.

THE DEFENDANT: She trying to let me use the bathroom.

THE COURT: No, you're in court right now.
Continue. Where are we at this point?

After Mezegabe's testimony, defense counsel called Appellant to testify, and the trial court instructed somebody to "Unmute him so he can speak." Appellant explained that somebody hired him to pick up the parts, and he would be paid $150. "A guy" met him and gave him the checks, but he could not remember where that transaction took place. Appellant was merely a middleman between buyer and seller. As for the e-mails, Appellant said that he did not send any e-mails but was given access to the "Jimmy Martin" e-mail account. And of the "burner app," Appellant thought its presence was unremarkable because "half the world has it on their phone," including Mezegabe.

Following argument, the trial court then began to announce its ruling, which Appellant took issue with:

THE COURT: All right. Thank you both. I agree with the State wholeheartedly. This is a no-brainer. First you give him a false name, Mr. Hughes.

THE DEFENDANT: I didn't give him a false name. I took -- I take --

THE COURT: Please mute the defendant.
Okay. You're muted. Please do not try and cause any more disruption.
But it's clear from the testimony from Detective Mezegabe

> that you gave him a false name to begin with. I believe what the deputy said. . . .

The trial court found the sole allegation true, revoked community supervision, and proceeded to adjudicate Appellant guilty and sentenced Appellant to ten years imprisonment. At the very end of the hearing, Appellant declared his desire to appeal:

THE DEFENDANT: I want to appeal. And I objected to this hearing last time you gave it. So you still did it anyway. I want to appeal.

THE COURT: Stop. Please mute him. Thank you. He's disruptive.

(Hearing concluded.)

On appeal, Appellant raised three points of error, the first of which contended that his right to be present in the courtroom during the hearing on the motion to adjudicate was denied. *Hughes v. State*, 651 S.W.3d 461, 463–64, 466 (Tex. App.—Houston [14th Dist.] 2022). The divided court of appeals held that intermediate appellate case law—which had held that the right to be present under the Confrontation Clause does not apply at probation revocation proceedings—had been negated by our opinion in *Ex parte Doan*, and accordingly that right applied here. *Id.* at 467 n.2 (citing cases), 467–68 (discussing *Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012)). On the merits, the court of appeals found Appellant's Confrontation Clause-based right to be present was violated because he:

was in a separate break-out room with no possibility to communicate with his counsel in private regarding how to confront and cross-examine Mezegabe—the sole witness the State called to prove its forgery allegations. Without the possibility to speak to his counsel in confidence during witness testimony, Appellant was not truly present during his hearing.

*Id.* at 470. The court of appeals could not say that the error was harmless and reversed and remanded

to the trial court. *Id.* at 471.[3]

Justice Wise dissented, arguing that it was unnecessary to broaden the scope of the Confrontation Clause because Appellant's claim derived from not only the Confrontation Clause but also the Due Process Clause. *Id.* at 472 (Wise, J., dissenting). Additionally, Justice Wise thought it was unnecessary to overrule prior court of appeals case law that had held the Confrontation Clause did not apply to probation revocation proceedings, because the proceeding in this case was a hearing on a motion to adjudicate, which unlike a probation revocation is not a "post-conviction proceeding." *Id.* (discussing *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). Finally, Justice Wise thought the record was insufficient to show that Appellant was unable to otherwise communicate with counsel when the trial court had him muted. *Id.* at 472–74.

> We granted the State's petition for discretionary review, which contends that:

> The Fourteenth Court erred by holding that the Sixth Amendment Confrontation Clause applied to probation revocation proceedings.[4] This holding conflicts with published holdings from four Texas courts of appeals and nine federal circuit courts, and with the federal Supreme Court's explicit statement that revocation proceedings are not "criminal prosecutions."

However, after reviewing the arguments of the parties and the record, the question presented by the State does not need to be answered. For the following reasons, we agree in part with Justice Wise's

---

[3] Appellant's second point of error challenged the sufficiency of the evidence to show he committed forgery, but the court of appeals found the evidence sufficient based on Mezegabe's testimony. *Hughes*, 651 S.W.3d at 466. Appellant's third point of error asked that the judgment be reformed to correct several errors, but the court of appeals declined to address this point due to its disposition of Appellant's first point of error. *Id.* at 471 n.6.

[4] The State throughout its briefing and at oral argument refers to the proceeding in this case as a "probation revocation." The court of appeals referred to the proceeding in this case as a community supervision revocation. *See, e.g.*, *Hughes*, 651 S.W.3d at 463–64, 466, 468. Because the State's motion was a "Motion to Adjudicate Guilt," we will refer to the proceeding in this case strictly as a hearing on a motion to adjudicate guilt.

dissenting opinion that this case is properly about the right to be present under the Due Process Clause, not the Confrontation Clause.

## II — Arguments of the Parties

The State argues that the court of appeals erred in this case in multiple ways. First, the State argues—and we agree—that the court of appeals improperly confused the right to be present under the Confrontation Clause with the right to be present under the Due Process Clause. Second, the State argues that the court of appeals erred in concluding that the right to be present under the Confrontation Clause applies to probation revocation proceedings and thus hearings on motions to adjudicate guilt. Third, conceding that there is a right to be present under the Due Process Clause, the State argues that the Due Process Clause-based right is subject to forfeiture and, by failing to object, Appellant failed to preserve any claim that his right to be present under the Due Process Clause was violated.

Appellant argues that probation is different from deferred adjudication. Accordingly, he insists that all of the State's authorities relating to probation revocation proceedings are not relevant to whether the Confrontation Clause applies to deferred adjudication proceedings. Because deferred adjudication occurs before the formal judgment and sentence are pronounced, Appellant's position is that deferred adjudication proceedings, unlike probation revocation proceedings, are part of the criminal prosecution and therefore the Confrontation Clause applies.

We begin by addressing the State's third argument, that the Due Process Clause right to be present applies but is subject to rules on preservation.

## III — The Due Process Right to Be Present

Recently, we reiterated that while:

> the right to be present in the courtroom at every stage of trial is guaranteed by the Confrontation Clause of the Sixth Amendment[,] [i]t is also based in the Due Process Clauses of the Fifth and Fourteenth Amendments and applies at any stage of the criminal proceeding that is critical to its outcome, "if the defendant's presence would contribute to the fairness of the procedure."

*Lira v. State*, 666 S.W.3d 498, 511 (Tex. Crim. App. 2023) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Although "not literally expressed in the [Constitution]," "the constitutional stature" of the right to be present is recognized as "essential to due process of law in a fair adversary process." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). "It is now accepted . . . that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Id.* (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934)). Accordingly,

> a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."

*United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder*, 291 U.S. at 105–06, 107–08); *Sandoval v. State*, 665 S.W.3d 496, 510 (Tex. Crim. App. 2022) (quoting *Gagnon*).

## IV — The Due Process Right to Be Present Applies in Hearings on Motions to Adjudicate Guilt

As noted above, the State agrees that the Due Process Clause-based right applies. The State concedes that the right does apply to "probation revocations." Because the State has, throughout its briefing and at oral argument, treated hearings on motions to adjudicate equivalently to probation revocation proceedings, the State's position should be interpreted to mean that the Due Process Clause-based right to be present applies in hearings on motions to adjudicate guilt.

This is correct. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV § 1. In *Morrissey*, the Supreme Court held that due process protections apply in parole revocation proceedings, commenting that:

> Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Then in *Scarpelli*, the Supreme Court held that due process protections applied in probation revocation proceedings, perceiving no difference between parole revocation and revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Both types of revocation proceedings result in a loss of liberty. *Id.*

We believe the same can be said of deferred adjudication community supervision: as far as the right to due process of law is concerned, there is no difference between the revocation of community supervision (probation) imposed after conviction and sentence, and the revocation of community supervision imposed after a decision to defer adjudication. Although a defendant on deferred adjudication community supervision is not wholly free and at liberty, he nevertheless has a conditional liberty interest at stake when the State seeks to revoke deferred adjudication community supervision. A hearing on a motion to adjudicate guilt could result in a defendant's conviction and pave the way toward sentence and imprisonment. The liberty stakes are there. "Revocation involves the loss of liberty and therefore implicates due process." *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012).

Unsurprisingly, we have addressed due process claims in deferred adjudication cases. *See,*

*e.g.*, *Ex parte Carmona*, 185 S.W.3d 492, 497 (Tex. Crim. App. 2006) (due process violated by revocation of deferred adjudication based on perjured evidence).

Not only does due process generally apply in deferred adjudication proceedings, the right to be present under the Due Process Clause applies. We explained in *Carmona* that:

> To meet the requirements of due process, the final revocation of probation must be preceded by a hearing, where the [defendant] is entitled to written notice of the claimed violations of his probation, disclosure of the evidence against him, *an opportunity to be heard in person and to present witnesses and documentary evidence*, a neutral hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation.

*Carmona*, 185 S.W.3d at 495 (emphasis added); *see also Tapia*, 462 S.W.3d at 41–42; *Black v. Romano*, 471 U.S. 606, 612 (1985); *Scarpelli*, 411 U.S. at 786; *Morrissey*, 408 U.S. at 489.

Furthermore, the nature of the right to be present indicates that it must apply. That right applies:

> whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

*Snyder*, 291 U.S. at 105–06, 107–08. Although a hearing on a motion to adjudicate guilt is not a formal, independent prosecution of an offense, charges are nevertheless levied against the defendant, and the hearing on the motion to adjudicate guilt is his one opportunity to defend against the charges. A hearing on a motion to adjudicate guilt would not be fair and just if the defendant is excluded.

In sum, we reaffirm that a defendant has a right to be present, under the Due Process Clause of the Fourteenth Amendment, in a hearing on a motion to adjudicate guilt.

### V — The Due Process Right to Be Present is Waivable, Not Forfeitable

The State points out that there was no objection to the trial court's action muting Appellant as a violation of the right to be present under the Due Process Clause. The State would have us hold

that the right to be present under the Due Process Clause is forfeitable under *Marin*, and therefore Appellant's Due Process Clause-based claim was not preserved and is not reviewable.

We have recognized that rights could be thought of as belonging to three different categories: "rights that are mandatorily enforced, rights subject to waiver, and rights subject to forfeiture." *Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). The first category, mandatorily enforced rights or "absolute requirements and prohibitions," "are to be observed even without partisan request." *Marin*, 851 S.W.2d at 280. They cannot "lawfully be avoided even with partisan consent." *Id.* "Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties." *Id.* at 279. Accordingly, a violation of one of these rights can be raised on appeal regardless of a waiver or a failure to object at trial. *Id.* at 280.

The second category, waivable rights, "must be implemented by the system unless expressly waived." *Id.* at 279. These waivable rights "are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system." *Id.* at 278. The defendant need not make a "request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver" by the defendant. *Id.* at 280. Waiver "is not sufficient . . . unless it amounts to the 'intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 279 (quoting *Janecka v. State*, 739 S.W.2d 813, 829 (Tex. Crim. App. 1987)); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). A defendant will not be deemed to have waived such a right "unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." *Marin*, 851 S.W.2d at 280. Accordingly, a violation of one of these rights may be raised for the first time on appeal, whether or not the defendant first insisted upon the right

in the trial court. *Id.*

The third category, forfeitable rights, "are to be implemented upon request." *Id.* at 279. "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong[,]" and "[m]any constitutional rights fall into this category." *Id.* "The trial judge . . . has no duty to enforce forfeitable rights unless requested to do so." *Id.* at 279–80. Consequently, if a party fails to request enforcement of his forfeitable rights in the trial court, no error attends the failure to enforce them, and no error is presented for review on appeal. *Id.* at 280.

The court of appeals in this case determined that the right to be present (under the Confrontation Clause) is a *Marin* category two waivable right. *Hughes*, 651 S.W.3d at 470. To reach this conclusion, the court of appeals followed the lead of the First Court of Appeals in Houston. *Id.* (agreeing with *Hayes v. State*, 516 S.W.3d 649, 656 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)). In *Hayes*, the defendant Hayes complained that he "was denied his Sixth Amendment rights under the Confrontation Clause" "because he was not 'brought up' from the jail on the day that his co-defendant, Amos, testified and presented his own punishment defense[.]" *Id.* at 653. The State countered that although Hayes himself was not present, defense counsel was present and did not object to Amos's testimony outside of Hayes's presence. *Id.* at 654. The State urged the court of appeals to hold that the right to be present (under the Confrontation Clause) is forfeitable and therefore no error was preserved for review. *Id.* Relying on this Court's opinion in *Garcia* and the Supreme Court's opinion in *Illinois v. Allen*, the court of appeals in *Hayes* concluded that the "Sixth Amendment right to be present for trial to confront witnesses is a category two *Marin* right, and cannot be forfeited by counsel's failure to assert it on a defendant's behalf." *Id.* at 655–56 (discussing *Garcia v. State*, 149 S.W.3d 135 (Tex. Crim. App. 2004), and *Illinois v. Allen*, 397 U.S.

337, 342–43 (1970)).

The State argues that the court of appeals in this case erred in relying on *Hayes* and the cases cited therein because those cases involve the right to be present under the Confrontation Clause, not the Due Process Clause.[5] While the State is correct that *Hayes* addressed the right to be present under

_____

[5] Instead, the State refers us to *Commonwealth v. Curran*, 178 N.E.3d 399, 404–05 (Mass. 2021) (defendant's claim "that his right 'to be present' was violated because he was not physically present in the court room" was "unpreserved"); *Brown v. State*, 335 So.3d 123, 128 (Fla. Dist. Ct. App. 2022) (noting that defendant claiming his right to be present was violated "did not object to appearing by video for his sentencing hearing"); and *Woodrome v. State*, No. 13-21-00036-CR, 2022 WL 480246, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 17, 2022, no pet.) (mem. op., not designated for publication) (concluding that defendant "failed to preserve his due process arguments for [appellate] review", including argument that "neither [he] nor his attorney were physically present in the courtroom because the hearing was held via Zoom").

We do not find those cases persuasive for the point the State is trying to make. From our reading of *Curran*, in Massachusetts preservation does not prevent appellate review as it would with regard to most errors in Texas. Instead, whether or not the issue was preserved affects the standard of review; unpreserved constitutional errors are still reviewable on appeal but merit reversal only on a finding of a substantial risk of a miscarriage of justice. *Curran*, 178 N.E.3d at 403 ("Because he failed to preserve these claims at the time of trial, they warrant relief only if any alleged error created a substantial risk of a miscarriage of justice."); *Commonwealth v. Francis*, 147 N.E.3d 491, 510 (Mass. 2020) ("Given this [failure to raise error at the first available opportunity], we review the defendant's constitutional claims for a substantial risk of a miscarriage of justice."). The Massachusetts treatment is somewhat similar to our review of jury charge errors under *Almanza*, in which the failure to object to the charge at trial does not prevent appellate review but instead affects the standard of review. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) ("[A]n error which has been properly preserved by objection will call for reversal as long as the error is not harmless. . . . [I]f no proper objection was made at trial . . . he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'"). The same is true for the State's reliance on *Brown*. In Florida, errors are still reviewable on appeal despite the lack of an objection to the trial court, but they are reviewed under a less favorable standard for fundamental error. *Brown*, 335 So.3d at 128 ("the defendant did not object to appearing by video for his sentencing hearing. Thus, we can review the defendant's argument only for fundamental error."); *Smith v. State*, 320 So.3d 20, 27 (Fla. 2021) ("If an issue is not preserved, it is reviewed only for fundamental error.").

The State's last case is *Woodrome*, an unpublished case from the Corpus Christi Court of Appeals, in which that court found the appellant's laundry list of due process complaints, including a claim that "neither Woodrome nor his attorney were physically present in the courtroom because

the Confrontation Clause instead of the Due Process Clause, the rule that the Confrontation Clause-based right is waivable ultimately flows from the United States Supreme Court's own language in *Snyder*, the leading case on the right to be present under the Due Process Clause. In *Snyder*, the Supreme Court noted that "[n]o doubt the [right to be present] may be lost by consent or at times even by misconduct." *Snyder*, 291 U.S. at 106. The Supreme Court expressly accepted that statement for the purposes of the Confrontation Clause's right to be present in *Allen*, 397 U.S. at 342–43.[6] In

---

the hearing was held via Zoom[,]" were not preserved for review by raising a due process complaint with the trial court. *Woodrome*, 2022 WL 480246, at *3. Setting aside the fact that *Woodrome* is unpublished and has no precedential value, Tex. R. App. P. 47.7(a), we find *Woodrome* unpersuasive because, to the extent that the court of appeals found the due process arguments were not preserved, the court of appeals's cited authority for the preservation requirement do not go so far as to hold that the right to be present specifically is forfeitable. *See id.* at *3 (citing *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); and *In re M.J.M.L.*, 31 S.W.3d 347, 352 (Tex. App.—San Antonio 2000, pet. denied). *Teixeira* found unpreserved a complaint that due process was violated by the trial court's refusal to consider the entire range of punishment. *Teixeira*, 89 S.W.3d at 192. *Fuller* found unpreserved challenges to the admission of expert testimony, and *Fuller* merely repeated that some constitutional errors are subject to preservation requirements. *Fuller*, 253 S.W.3d at 232–33. Finally, *M.J.M.L.* is wholly inapposite; it is a civil appeal of a suit-affecting-parent-child-relationship. *M.J.M.L.*, 31 S.W.3d at 349. Preservation of error is different in civil cases. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."). Furthermore, the due process complaint that was found unpreserved was a claim that the termination of parental rights violated due process because even if the appellant engaged in conduct endangering the child at issue, the State failed to make a causal connection between his conduct and any harm to the child. *M.J.M.L.*, 31 S.W.3d at 352–53. Neither *Teixeira*, *Fuller*, nor *M.J.M.L.* had anything to say about whether the right to be present under the Due Process Clause is one of the types of due process rights subject to forfeiture.

[6] The Supreme Court in *Allen* "explicitly [held]":

> that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Baltierra*, a pre-*Marin* case, we held that the non-English speaking defendant did not waive his right to an interpreter, which was itself based on the right to be present under the Confrontation Clause, and we noted that "within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him . . . absent a waiver of that right through defendant's own conduct as in, *e.g.*, *Illinois v. Allen*[.]" *Baltierra v. State*, 586 S.W.2d 553, 556, 559 (Tex. Crim. App. 1979). Relying on *Baltierra*, we then held in *Garcia* that the right to an interpreter, based on the right to be present under the Confrontation Clause, is waivable under the meaning of *Marin*. *Garcia*, 149 S.W.3d at 143–45 (discussing *Baltierra* and *United States ex rel. Negron v. New York*, 434 F.2d 386 (2d Cir. 1970)); *see also Negron*, 434 F.2d at 390 (rejecting "government's suggestion that Negron waived" his right to an interpreter, based on the right to be present under the Confrontation Clause, "by his passive acquiescence in the grinding of the judicial machinery and his failure to affirmatively assert the right"). And *Hayes*, relied upon by the court of appeals in this case, followed *Garcia* and *Allen*. *See Hayes*, 516 S.W.3d at 655–56.

Returning to *Snyder*, when the Supreme Court held that a defendant has a right to be present under the Due Process Clause, it noted that "[n]o doubt the privilege may be lost by consent or at times even by misconduct." *Snyder*, 291 U.S. at 106. Because the right may be lost "by consent" or "by misconduct," the right is one that is "not extinguished by inaction alone." *See Marin*, 851 S.W.2d at 278 ("A principle characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone.").

Furthermore, simply restating *Snyder*'s description of the right to be present under the Due

---

*Allen*, 397 U.S. at 343.

Process Clause answers the question whether the right is "fundamental to the proper functioning of our adjudicatory system." *See Marin*, 851 S.W.2d at 278. A defendant's right to be present applies:

> whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

*Snyder*, 291 U.S. at 105–06, 107–08.

Although the scope and protection of the right to be present under the Due Process Clause differs from the right under the Confrontation Clause, we see no reason to declare one forfeitable and the other waivable. Indeed, this Court and the courts of appeals have long treated the right to be present as subject to waiver (typically by the defendant's voluntary absence) regardless of the particular basis for the right, whether statute,[7] the Confrontation Clause,[8] or even the Due Process

---

[7] *See* TEX. CODE CRIM. PROC. Ann. art. 33.03 (trial may proceed when defendant voluntarily absents himself); *Miller v. State*, 692 S.W.2d 88, 94 (Tex. Crim. App. 1985) (Teague, J., concurring) ("Art. 33.03 . . . provides that a defendant may waive his right to be present . . ."); *Gonzales v. State*, 515 S.W.2d 920, 920–21 (Tex. Crim. App. 1974) (defendant who was free on bail, present in court during jury selection, and entered a plea of not guilty "waived his right to be personally present" under art. 33.03 when he failed to appear in court the next morning).

*See also* TEX. CODE CRIM. PROC. art. 580 (West 1928) ("In all prosecutions for felonies, the defendant must be personally present at the trial"); *Phillips v. State*, 288 S.W.2d 775, 775–76 (Tex. Crim. App. 1956) (conviction reversed where defendant was not present when motion for new trial was overruled, he was in jail, and he did not waive his right to be present).

*See also* TEX. CODE CRIM. PROC. art. 692 (West 1928) ("In felony cases the defendant must be present when the verdict is read unless his absence is wilful or voluntary."); *Reed v. State*, 353 S.W.2d 850, 851 (Tex. Crim. App. 1962) (finding defendant waived his right to be present during the reading of the verdict when, after the close of evidence, "he 'knew he had had it', so he went to Dallas where he remained until his arrest").

[8] *Baltierra*, 586 S.W.2d at 556 ("within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him . . . absent a waiver of that right through defendant's own conduct as in, *e.g.*, *Illinois v. Allen*[.]").

Clause. Notably, in *Routier* we relied upon the fact of a waiver—not a forfeiture—in overruling an alleged violation of the right to be present under the Due Process Clause. *Routier v. State*, 112 S.W.3d 554, 577 (Tex. Crim. App. 2003) (declining to say due process right to be present was violated, where defendant's attorneys had waived the right to be present and "[i]n the absence of a showing that the waiver was erroneous").

Finally, we think that characterizing the right to be present as waivable makes sense because a defendant should not be required to insist upon being accorded his right to be present in the courtroom. Were we to classify the right to be present as forfeitable, we would on the one hand say that a defendant has a right to be present, but on the other hand allow a proceeding to stand where he was excluded and unable to object to the trial court's failure to ensure that he was there.[9] We believe the process to be closer to the constitutional ideal of "fair" and "just" when the defendant is present, and also "fair" and "just" if the proceeding occurs without him *after* he has chosen to be absent and his absence is not forced upon him.

We reaffirm that the right to be present under the Due Process Clause is not forfeitable under *Marin*. The right is waivable and, unless validly waived, an appellant may raise, as error, a violation of the right for the first time on appeal. The degree of violation may affect the appellant's prospects on the merits, but it should not affect whether the issue gets addressed in the first place. Because Appellant did not waive his right to be present, his issue was properly before the court of appeals, and the issue is now properly before this Court.

### VII — Confrontation Clause or Due Process Clause

---

[9] If an objection were required, we wonder how Appellant would have made an objection after being muted and how the record would have captured and reflected such an objection.

On the merits of the issue, the court of appeals determined that Appellant's right to be present *under the Confrontation Clause* was violated. The State's first argument is that the court of appeals confused and conflated the right to be present under the Sixth Amendment's Confrontation Clause and the right to be present under the Fourteenth Amendment's Due Process Clause.

In Part II of its opinion, the court of appeals "address[ed] whether the constitutional guarantees of confrontation and due process of law apply to revocation hearings." *Hughes*, 651 S.W.3d at 466. In the following section titled "Revocation Hearing and Constitutional Guarantees of Confrontation and Due Process," the court of appeals found that appellate court case law holding that the Confrontation Clause does not apply to community supervision revocation proceedings was contrary to our opinion in *Doan*. *Id.* at 467 & n.2. After discussing *Doan*, the court of appeals ended this section of its opinion by briefly adding that "[g]iven the Texas Court of Criminal Appeals's holding in *Doan*, we [the court of appeals] conclude that due process safeguards apply at a community supervision revocation hearing." *Id.* at 468.

Yet after having concluded that *due process safeguards apply*, the court of appeals then proceeded to find that *the Confrontation Clause* was violated. *Id.* ("Next, we must determine whether the trial court violated Appellant's right to be present . . . under the Confrontation Clause of the Sixth Amendment."); *id.* at 470 ("We conclude that Appellant was not present at his hearing for Sixth Amendment purposes . . . Therefore, under the circumstances of this particular case, the trial court violated Appellant's Sixth Amendment right to be present to confront and cross-examine witnesses.").

Having reviewed the court of appeals's opinion, we agree with the State that the opinion was confused, in that: (1) it interpreted *Doan* to mean the right to be present under the Confrontation

Clause applies in probation revocation proceedings; (2) *Doan* therefore requires due process safeguards to apply in probation revocation proceedings; and (3) the Confrontation Clause was violated in this case. Point (1) had no relation to (2)—if *Doan* requires the Confrontation Clause to apply, how does that mean *Doan* requires due process safeguards to apply? And point (2) had no relation to (3)—the court of appeals's observation that *Doan* requires due process safeguards to apply played no part in its analysis and conclusion that the *Confrontation Clause* was violated. Yet the court of appeals found *Doan* requires the Confrontation Clause to apply; the court of appeals found *Doan* requires due process safeguards to apply; and because due process safeguards apply, the court of appeals found the Confrontation Clause was violated here.

Nevertheless, we do not think the court of appeals's general observation that due process safeguards apply is *dicta*, wrong, or irrelevant. In his brief to the court of appeals, Appellant did not invoke the Confrontation Clause. His brief expressly invoked due process.[10] The court of appeals majority need not have explored whether the right to be present under the Confrontation Clause

---

[10] In his brief to the court of appeals, Appellant relied on due process and due course of law as the legal basis for his argument:

> A probationer is entitled to certain **due process** protections in revocation proceedings. . . . In *Gagnon v. Scarpelli*, . . . the Supreme Court enunciated the minimum requirements of **due process**, which must be observed in probation revocation hearings. They include: written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him, the opportunity to be heard in person and to present witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the fact finders as to the evidence relied on and the reasons for revoking probation. . . . The probationer's interests are also protected by the **due course of law** provisions of the Texas Constitution. . . .

Appellant's Br. at 5–6, *Hughes*, 651 S.W.3d 461 (No. 14-20-00628-CR) (emphasis added) (citations omitted).

applies in hearings on motions to adjudicate guilt, because Appellant's claim was based on the right to be present under the Due Process Clause and could have been resolved on that basis. In short, we agree with Justice Wise's dissenting opinion below that it was unnecessary for the court of appeals to broadly hold that the Confrontation Clause applies at hearings on motions to adjudicate. *See id.* at 472 (Wise, J., dissenting).

Insofar as the court of appeals found a Confrontation Clause violation in evaluating Appellant's Due Process Clause issue, we agree that the court of appeals confused the issues.[11] As to whether the Confrontation Clause applies in hearings on motions to adjudicate guilt, that question will have to wait until another day. The State's ground for review, solely complaining of the Confrontation Clause aspect of the court of appeals's decision, is dismissed.

### VIII — Remand is Unnecessary

Although the court of appeals incorrectly pointed to the Confrontation Clause, we do not remand the case back to that court to view Appellant's issue under the Due Process Clause. We have

---

[11] Arguably, the court of appeals reached Appellant's right to confront the witnesses against him, not as a matter of the Confrontation Clause, but as a matter of the Due Process Clause. The Supreme Court explained, in *Gagnon*, that the right to confrontation is also encompassed within due process:

> the 'minimum requirements of due process' include . . . '(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) **the right to confront and cross-examine adverse witnesses** (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.'

*Gagnon*, 411 U.S. at 786 (quoting *Morrissey*, 408 U.S. at 489) (emphasis added).

noted that "our usual practice is to remand to the court of appeals to apply correctly all of the facts to the appropriate legal standard[.]" *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997). "Whether to conduct a *de novo* review or remand for the Court of Appeals to do so in the first instance is a discretionary matter and is governed by the same types of prudential considerations used in determining whether to grant review at all." *Loesch v. State*, 958 S.W.2d 830, 832 n.2 (Tex. Crim. App. 1997).

Although "as in all such discretionary decisions, we need not articulate our reasons[,]" *id.*, to remand "in this case would be redundant since our resolution of the issue before us required that we conduct our own analysis of the facts and law." *Hernandez*, 939 S.W.2d at 179. Additionally as discussed above, the State acknowledges in its brief that the Due Process Clause applies in revocation proceedings, although the State would have us hold that the due process aspect of Appellant's issue was forfeited. Furthermore, we ordered and heard oral argument in which both parties discussed not only the Confrontation Clause aspects of the case but also the applicability of the Due Process Clause.[12] We believe it would be "within our discretion and in the interests of judicial economy . . . to explain why the court of appeals reached the correct result in this case[.]" *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). Although there was no need for the court of appeals to do a Confrontation Clause analysis, the court of appeals correctly found Appellant's right to be present was violated, when considered under the Due Process Clause.

### IX — Appellant's Due Process Right to Be Present Was Violated

As discussed above, "[a] defendant has a due process right to be present 'whenever his

---

[12] Tex. Ct. of Crim. Appeals, *Texas Court of Criminal Appeals Oral Arguments - 10/19/22*, YOUTUBE (Oct. 19, 2022), https://www.youtube.com/watch?v=ZN1QNMGhADw.

presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Sandoval*, 665 S.W.3d at 510 (quoting *Gagnon*, 470 U.S. at 526). "The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Gagnon*, 470 U.S. at 526.

While Appellant's issue on appeal claimed his due process right to be present was violated both by the use of Zoom and by the trial court's muting of him in the Zoom proceeding, the court of appeals declined to make any pronouncements regarding whether a defendant is absent (under the Confrontation Clause) if he is present via video-conferencing. *Hughes*, 651 S.W.3d at 470. The court of appeals focused on the combination of being present over Zoom and then being muted by the trial court. *Id.*[13]

Ordinarily, when all of the parties are physically present, a defendant's disruptions would earn rebukes and orders to be quiet, such as those that Appellant twice earned over the Zoom teleconference without being muted.[14] The difference however is that in the ordinary case a

---

[13] Because the court of appeals's decision under review specifically considered the combination of appearing over Zoom and being muted, the question of whether the trial court's decision to conduct the hearing on the motion to adjudicate over Zoom, absent Appellant's waiver, would automatically be a due process violation is not present before us. The answer to that question will have to wait for another day.

[14] After Appellant testified and defense counsel rested, Appellant had more to say:

[defense counsel]:    I have no further questions, Your Honor.

THE COURT:    Okay. Call your next witness.

[defense counsel]:    The defense rests --

THE DEFENDANT:  The detective said I gave him the checks; now he's saying they were on the seat. Which one is it? That's crazy, man.

defendant that is told to be quiet would be physically next to defense counsel and could have quietly talked to counsel or poked and prodded counsel, passed notes, or otherwise indicated to counsel that he wanted to talk. Even a defendant that must be bound and gagged can still find a way to make his desire to talk to counsel known.

But in Appellant's Zoom teleconference, that ability to somehow communicate with counsel was lost when the trial court had him muted. Appellant was reduced to a silent portrait of a man. When the trial court muted Appellant he was effectively removed from the virtual courtroom and placed into a separate virtual courtroom where he could only watch a stream of the proceedings. He became little more than a spectator in a proceeding that could—and in fact did—result in his loss of liberty. His due process right to be present was violated.

---

THE COURT:        Don't speak at this time, Mr. Hughes.

THE DEFENDANT:  I'm sorry.

THE COURT:        Thank you.

[defense counsel]:   The defense rests, Your Honor.

And during the State's closing statement, Appellant once again interrupted:

[prosecutor]:        . . . He handed him the check for the parts that were to be delivered. The check that was handed was --

THE DEFENDANT:  I didn't hand no check. I did not hand the check.

THE COURT:        Quiet. Quiet. Do not interrupt.

[prosecutor]:        The check that Detective Mezegabe got was -- he did -- they did the investigation, found out it had a fraudulent bank account number on it and was not a valid check. . . .

In isolation, these exchanges in the record are indistinguishable from a commonplace occurrence in a courtroom where all parties are present.

Of course, the trial court's manifest intent was not for Appellant to be absent. When it ordered Appellant be muted, the trial court further instructed:

> "Do not let him leave the Zoom."
> "Do not let him leave. He is in court."
> "No, you're in court right now."
> "Okay. You're muted. Please do not try and cause any more disruption."

The trial court clearly wanted Appellant to be present but silenced. However, presence alone is not the goal. Presence is a means to an end—a defendant's right to be present is important because it accords him a full opportunity to defend against the charges against him. *Snyder*, 291 U.S. at 105–06. Mere presence—physical or virtual—without an ability to participate in the proceeding is hardly the presence required by the Constitution.

## X — Appellant was Reversibly Harmed

Having found that the court of appeals did not itself err in finding error, the next step is to review the court of appeals's conclusion that the error was harmful. Because the error is constitutional, it is subject to harmless error review, and a reviewing court is required to reverse the "judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Whether a particular constitutional error is harmless beyond a reasonable doubt is determined by considering "any and every circumstance apparent in the record that logically informs" the analysis. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). Further, the evaluation is performed in a neutral manner, not in the light most favorable to the prosecution. *Love v. State*, 543 S.W.3d 835, 846 (Tex. Crim. App. 2016). The State, as the beneficiary of the error, has the burden to show on appeal that the constitutional error was harmless beyond a reasonable doubt. *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020); *Wells v. State*, 611 S.W.3d 396, 411 (Tex. Crim. App. 2020).

But the constitutional right at issue is the due process right to be present, and we do not review solely for harmless error. In *Adanandus*, we recognized that the reasonably substantial relationship test, which determines whether the right to be present applies, is also essentially a harm analysis. *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App. 1993). While both tests review for harm, they are not interchangeable. The harmless error test, in the context of the right to be present, seeks to determine the effect of the defendant's absence on the outcome of the proceeding, whereas the reasonably substantial relationship test seeks to determine the effect of the defendant's absence on the advancement of his defense. *Id.* at 219–20. In light of the distinct focal points of the two tests, the harmless error test should be applied in addition to the reasonably substantial relationship test. *Id.* at 220.

The State argues that the error here was harmless because the record is silent as to what Appellant would have told counsel if he had been physically present in the courtroom or able to confidentially communicate with counsel via video-conference, and how that would have influenced the way counsel cross-examined Mezegabe. However, the silent record works against the State because when the error is constitutional, the State has the burden to show the error was harmless. *Haggard*, 612 S.W.3d at 328; *Wells*, 611 S.W.3d at 411. Indeed, no burden to show harm is placed on a defendant who appeals. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

Has the State met its burden—does the record show harmlessness? Was Appellant "absent" at a time when his presence bore a reasonably substantial relationship to his opportunity to defend himself? The record shows Mezegabe was testifying that Appellant attempted to give him a fraudulent check, and Appellant wanted to say that this testimony was false, at which point the trial court muted Appellant before Appellant could elaborate further. Mezegabe's testimony directly

related to whether Appellant committed the offense of forgery and thus whether Appellant violated a condition of his community supervision and whether the trial court should proceed to adjudication. And, of course, the trial court ultimately did proceed to adjudication and even revoked community supervision. Appellant's presence at this time bore a reasonably substantial relationship to his opportunity to defend against the charge.

Furthermore, the record does not show that the trial court's action in muting Appellant after he had alleged Mezegabe was lying could not have affected the trial court's ruling. In other words, there is no indication that preventing Appellant from speaking had no contribution to the trial court's decision to proceed to adjudication. The record fails to show harmlessness. If the record revealed that Appellant's belief that Mezegabe was lying was patently incorrect, then it could not have contributed to the trial court's decision and such a showing would reveal harmlessness. If Appellant's information was correct, harmlessness would have also been shown by evidence that Appellant was otherwise able to communicate with counsel despite being muted, such as record evidence that Appellant was able to use Zoom's chat function. Similarly, if Appellant was unable to communicate with counsel during the hearing while he was muted, harmlessness could nevertheless be shown if he shared his information to counsel before the hearing.

Instead, all we have is Appellant's assertion that Mezegabe was lying before he was cut-off. There was no showing that, despite being muted, Appellant was able to tell counsel what he was trying to say in open court using Zoom's chat function or some other method. There was no showing that whatever Appellant was trying to say would not have aided counsel in objecting to Mezegabe's testimony or in cross-examining Mezegabe. Rather, if Appellant had information to show Mezegabe was lying, that would have helped contradict Mezegabe's version of events or impeach Mezegabe's

credibility.

Constitutional error must be reversed unless the record shows the error was harmless, and it is the State's burden to show harmlessness. Tex. R. App. P. 44.2(a); *Haggard*, 612 S.W.3d at 328. Based on the record before us, we cannot determine beyond a reasonable doubt that the trial court's violation of Appellant's right to be present under the Due Process Clause, by muting Appellant during crucial testimony at a time when Appellant may have had information to share with counsel to rebut that testimony, did not contribute to the decision to revoke community supervision and sentence Appellant. The court of appeals did not err in finding that Appellant was harmed.

## XI — Conclusion

In conclusion, the right to be present under the Fourteenth Amendment's Due Process Clause applies in a hearing on a motion to adjudicate. The Due Process Clause-based right to be present is waivable, not forfeitable, and Appellant's point of error raising a violation of that right was properly before the court of appeals. To the extent that the court of appeals addressed Appellant's point of error as a matter of the right to be present under the Sixth Amendment's Confrontation Clause, the State is correct that the court of appeals erroneously conflated the Confrontation Clause-based right with the Due Process Clause-based right.

Nevertheless, the court of appeals did not err in finding that Appellant's right to be present was violated and that there was harm. The trial court's action ordering Appellant to be muted when he tried to say a key witness was lying, at a time when the witness was giving crucial evidence, was not harmless. The error impacted Appellant's ability to communicate with counsel, relegating him to being a distant observer and affecting his ability to ultimately defend himself.

The judgment of the court of appeals is affirmed, and the matter is remanded to the trial court

for further proceedings.

Delivered: May 22, 2024
Publish